## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NYIER STARKS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 17-1662-CFC |
| ) | |
| CLAIRE DEMATTEIS, Commissioner, ) | |
| Delaware Department of Corrections, ) | |
| ROBERT MAY, Warden, ) | |
| and ATTORNEY GENERAL OF THE ) | |
| STATE OF DELAWARE, ) | |
| ) | |
| Respondents.[1] ) | |

## <u>MEMORANDUM OPINION</u>

J. Brendan O'Neill and Nicole Marie Walker, Office of Defense Services for the State of Delaware, Wilmington, Delaware.  Counsel for Petitioner.


Brian L. Arban, Deputy Attorney Generals, Delaware Department of Justice, Wilmington, Delaware.  Counsel for Respondents.



February 8, 2021
Wilmington, Delaware

---

[1]Warden Robert May replaced former Warden Dana Metzger, an original party to the case.  *See* Fed. R. Civ. P. 25(d).

CONNOLLY, UNITED STATES DISTRICT JUDGE:

Pending before the Court is a Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition") filed by petitioner Nyier Starks ("Petitioner"). (D.I. 2) The State filed an Answer in opposition. (D.I. 13)

## I.    BACKGROUND

### A.    Procedural Background of Petitioner's Case

In May 2012, Petitioner was indicted for drug dealing, possession of a controlled substance, and loitering. (D.I. 13 at 1) The record does not indicate that that the drugs at issue were sent to Delaware's Office of the Chief Medical Examiner ("OCME") for testing, or that Petitioner received a copy of a lab report. (D.I. 13 at 6) On June 6, 2012, Petitioner pled guilty to drug dealing. (*Id.* at 1) In exchange for his guilty plea, the State entered a *nolle prosequi* on the remaining charges. On September 21, 2012, the Superior Court sentenced Petitioner to eight years of Level V incarceration, suspended after one year for seven years at Level IV (Crest) which, in turn, was suspended after successful completion of Crest for 18 months of Level III probation and the Crest aftercare program. *Id.* Petitioner did not appeal his conviction or sentence. (*Id.* at 2)

On April 12, 2013, Petitioner was arrested and held without bail based upon an administrative warrant for a violation of probation ("VOP"). (D.I. 13 at 2) On April 18, 2013, the Superior Court held a hearing and found Petitioner in violation of probation, and sentenced him to seven years and one month at Level V. (*Id.*)

Petitioner filed three motions for modification/reduction of sentence from May 17, 2013 through January 2, 2014, all of which the Superior Court denied. (D.I. 13 at 2) Petitioner did not appeal those decisions. (*Id.*)

On January 24, 2014, Petitioner filed a *pro se* letter requesting to be resentenced. (D.I. 13 at 2)  The Superior Court entered a modified VOP sentence on February 27, 2014, which provided Petitioner with nine months, thirty-seven days credit for his sentence; suspended his prior seven year and one month sentence for six months at Level IV home confinement, followed by eighteen months at Level III; and imposed zero tolerance for failing to enroll in anger management and to meaningfully engage in mental health treatment. (*Id.*)

On June 26, 2014, November 13, 2014, and February 23, 2015, Petitioner was found in violation of his probation and sentenced accordingly. (D.I. 13 at 2)  Petitioner did not appeal those decisions. (*Id.*)

On April 13, 2015, Petitioner filed a motion for modification of sentence, which the Superior Court denied on August 5, 2015. (D.I. 13 at 2)  Petitioner did not appeal that decision. (*Id.*)

On May 29, 2015, Delaware's Office of Defense Services ("ODS") filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion") on Petitioner's behalf, which the Superior Court denied on October 30, 2017. (D.I. 2-4 at 2)  Petitioner did not appeal that decision. (D.I. 2 at 4)

On November 16, 2017, the ODS filed in this Court a federal habeas Petition on Petitioner's behalf, asserting that his guilty plea was involuntary under *Brady v. United States*, 373 U.S. 742 (1970) because the State failed to disclose the existence of an evidence scandal in the Office of the Chief Medical Examiner ("OCME") misconduct prior to the entry of his guilty plea. (D.I. 2 at 10-11)  Petitioner alleges that the OCME misconduct constituted impeachment material under *Brady v. Maryland*, 373 U.S. 83

2

(1963).  The State filed an Answer asserting that the Petition should be denied as procedurally barred or, alternatively, as time-barred or moot.[2]  (D.I. 13)

### B.    OCME Criminal Investigation

The relevant information regarding the OCME evidence mishandling is set forth below:

> In February 2014, the Delaware State Police ("DSP") and the Department of Justice ("DOJ") began an investigation into criminal misconduct occurring in the Controlled Substances Unit of the OCME.
>
> The investigation revealed that some drug evidence sent to the OCME for testing had been stolen by OCME employees in some cases and was unaccounted for in other cases. Oversight of the lab had been lacking, and security procedures had not been followed. One employee was accused of "dry labbing" (or declaring a test result without actually conducting a test of the evidence) in several cases. Although the investigation remains ongoing, to date, three OCME employees have been suspended (two of those employees have been criminally indicted), and the Chief Medical Examiner has been fired.
>
> There is no evidence to suggest that OCME employees tampered with drug evidence by adding known controlled substances to the evidence they received for testing in order to achieve positive results and secure convictions. That is, there is no evidence that the OCME staff "planted" evidence to wrongly obtain convictions. Rather, the employees who stole the evidence did so because it in fact consisted of illegal narcotics that they could resell or take for personal use.

*Brown v. State*, 108 A.3d 1201, 1204-05 (Del. 2015).

---

[2]After filing the instant Petition, Petitioner was found to be in violation of his probation one more time, and he also filed additional motions in the Superior Court concerning his sentence.  (D.I. 12 at 4-5)  Since those proceedings are unrelated to the instant Petition, the Court has not included them in the Background section.

## C.    Background Information Regarding Other OCME/Habeas Cases

The ODS filed more than 700 OCME Rule 61 motions in New Castle County

between 2014 and 2017, essentially asserting the same OCME misconduct and *Brady*

*v. Maryland/Brady v. United States* arguments Petitioner asserts in this proceeding.  In

those proceedings, at the Superior Court's request, the ODS chose eight Rule 61

motions for the Superior Court to decide ("Rule 61/OCME Test Case").  *See State v.*

*Miller*, 2017 WL 1969780, at *1 (Del. Super. Ct. May 11, 2017).  Since the Rule 61

motions filed by the ODS in the more than 700 other cases were identical to those in the

Rule 61/OCME Test Case, the parties agreed that the Superior Court's decision in the

Rule 61/OCME Test Case would resolve many of the remaining outstanding Rule 61

motions pending before the Superior Court; Petitioner's Rule 61 motion was one of

those cases.  (D.I. 2-3 at 4); *see Lewis v. DeMatteis*, 2020 WL 5258462, at *1 (D. Del.

Sept. 3, 2020).  The Superior Court denied the Rule 61 motions in the Rule 61/OCME

Test Case on May 11, 2017, *id.*, and then denied the Rule 61 motions in the other cases

after that disposition.  The large majority of the defendants, including Petitioner, did not

appeal the denial of their Rule 61 motions

Instead, a large majority of those defendants who did not file a post-conviction

appeal (including Petitioner) filed § 2254 petitions in this Court, all alleging the same

OCME misconduct and *Brady v. Maryland/Brady v. United States* arguments.  While

some of the petitioners had been convicted after proceeding to trial, most the

petitioners, including this Petitioner, had entered guilty pleas.  Soon after filing the

habeas petitions, the parties in each case filed a joint motion to stay briefing until Judge

Stark resolved *Boyer v. Akinbayo*, Civ. A. No. 17-834-LPS, a case with the same

4

procedural issue (*i.e.*, whether the petitioner's failure to appeal the Superior Court's denial of his Rule 61 motion precluded habeas relief due to his purposeful failure to exhaust state remedies).  On November 6, 2018, Judge Stark dismissed Boyer's habeas petition as procedurally barred and declined to issue a certificate of appealability.  *See Boyer v. Akinbayo*, 2018 WL 5801545 (D. Del. Nov. 6, 2018).  Boyer filed a notice of appeal with the Third Circuit Court of Appeals.  On April 11, 2019, the Third Circuit denied Boyer's request for a certificate of appealability because "[j]urists of reason could not debate that the District Court properly denied Appellant's 28 U.S.C. § 2254 habeas petition." (*See* D.I. 23 in *Boyer*, Civ. A. No. 17-834-LPS)  Following the decision in *Boyer*, the Court lifted the stay in each of the habeas proceedings (including Petitioner's) where the petitioner did not appeal the Superior Court's denial of his Rule 61 motion.

## II.  GOVERNING LEGAL PRINCIPLES

### A. Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003).  Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S.

685, 693 (2002).

## B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief

unless the petitioner has exhausted all means of available relief under state law.  *See*

28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v.*

*Connor*, 404 U.S. 270, 275 (1971).  AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court
> shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the
> courts of the State; or
>
> (B)(i) there is an absence of available State corrective
> process; or (ii) circumstances exist that render such process
> ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).  This exhaustion requirement, based on principles of comity,

gives "state courts one full opportunity to resolve any constitutional issues by invoking

one complete round of the State's established appellate review process." *O'Sullivan*,

526 U.S. at 844-45; *see Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).

A petitioner satisfies the exhaustion requirement by demonstrating that the

habeas claims were "fairly presented" to the state's highest court, either on direct

appeal or in a post-conviction proceeding, in a procedural manner permitting the court

to consider the claims on their merits.  *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005);

*Castille v. Peoples,* 489 U.S. 346, 351 (1989).  If the petitioner raised the issue on direct

appeal in the correct procedural manner, the claim is exhausted and the petitioner does

not need to raise the same issue again in a state post-conviction proceeding.  *See*

*Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir. 1996).

If a petitioner presents unexhausted habeas claims to a federal court, and further state court review of those claims is barred due to state procedural rules, the federal court will excuse the failure to exhaust and treat the claims as exhausted. *See Coleman v. Thompson*, 501 U.S. 722, 732, 750-51 (1991) (such claims "meet[] the technical requirements for exhaustion" because state remedies are no longer available); *see also Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006). Such claims are deemed procedurally defaulted. *See Coleman*, 501 U.S. at 749; *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is treated as exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750*; Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that the errors worked to his actual and substantial disadvantage, infecting his entire trial

with error of constitutional dimensions." *Id.* at 494.

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent,"[3] then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

## III.    DISCUSSION

### A.  Exhaustion

The Third Circuit has recognized three situations where a petitioner's failure to exhaust can be entirely excused, thereby permitting the reviewing court to proceed to the merits of the unexhausted claims without engaging in the cause-and-prejudice analysis required for procedurally defaulted claims. *See, e.g., Lee v. Strickman*, 357 F.3d 338, 344 (3d Cir. 2004); *Story v. Kindt*, 26 F.3d 402, 405-06 (3d Cir. 1994); *Wise v. Fulcomer*, 958 F.2d 30, 33 n.6 (3d Cir. 1992); *Mayberry v. Petsock*, 821 F.2d 179, 184

---

[3]*Murray*, 477 U.S. at 496.

(3d Cir. 1987); *Woodruff v. Williams*, 2016 WL 6124270, at \*1 (E.D. Pa. Oct. 19, 2016).

Specifically, the Third Circuit has not required exhaustion where: (1) "the state

corrective process is so deficient as to render any effort to obtain relief futile," *Gibson v.

Scheidemantel*, 805 F.2d 135, 138 (3d Cir. 1986); (2) "the activities of state authorities

made the prisoner's resort to the state procedures in effect unavailable," *Mayberry*, 821

F.2d at 184; and (3) an "inordinate delay in state procedures . . . render[s] state process

ineffective." *Hankins v. Fulcomer*, 941 F.2d 246, 249 (3d Cir. 1991). In contrast, the

Third Circuit has held that "likely futility on the merits [ ] in state court of a petitioner's

habeas claim does not render that claim exhausted within the meaning of §

2254(b)(1)(A) so as to excuse the petitioner's failure to exhaust that claim by presenting

it in state court before asserting in a federal habeas petition." *Parker v. Kelchner*, 429

F.3d 58, 64 (3d Cir. 2005).

In this case, Petitioner acknowledges that he did not exhaust state remedies for

his habeas claims due to his failure to appeal the denial of his Rule 61 motion to the

Delaware Supreme Court. In an attempt to avoid the procedural default analysis that

would typically apply in this situation and have the Court proceed directly to the merits

of his claims, Petitioner asserts he should be entirely excused from adhering to the

exhaustion requirement because his case falls within the exceptions to exhaustion

recognized by the Third Circuit. He presents the following three arguments to support

this position: (1) appealing the denial of his Rule 61 motion to the Delaware Supreme

Court would have been futile because that court has rejected identical claims based

upon the OCME misconduct in other cases for postconviction relief ("futility on the

merits" excuse); (2) exhausting state remedies by appealing the Superior Court's Rule

9

61 decision would have been futile because of the Superior Court's inordinate delay in adjudicating his Rule 61 motion ("futility due to inordinate delay" excuse); and (3) appealing the denial of his Rule 61 motion to the Delaware Supreme Court would have been futile because Rule 61 does "not provide an adequate opportunity for [Petitioner] to obtain relief" ("futility due to deficiency of Rule 61 proceedings" excuse). (D.I. 2 at 4-7)  The State contends that Petitioner's failure to exhaust should not be excused for any of these "futility" reasons and, since state criminal procedural rules preclude him from returning to the state courts for further review, the claims are now technically exhausted but procedurally defaulted.  (D.I. 13 at 17-29)

The judges in this District Court have already considered, and rejected, the first two "futility" arguments presented here by Petitioner in the 2018 *Boyer* decision, and rejected all three "futility" arguments in the subsequent forty-five habeas cases filed by the ODS that involved a purposeful and knowing failure to exhaust state remedies for the same OCME misconduct/*Brady* claims.  *See Brown v. DeMatteis,* 2020 WL 7027563, at *8-11 (D. Del. Nov. 30, 2020) (consolidation of eleven cases); *Ringgold v. DeMatteis*, 2020 WL 5350268, at *8-10 (D. Del. Sept. 4, 2020) (consolidation of nine cases); *Lewis v. DeMatteis*, 2020 WL 5258462, at *8-10 (D. Del. Sept. 3, 2020) (consolidation of eight cases); *Turner v. DeMatteis,* 2020 WL 5077939, at *11-13 (D. Del. Aug. 27, 2020) (consolidation of seventeen cases).  Although the ODS appealed the denial of Boyer's petition, the Third Circuit denied Boyer's request for a certificate of appealability, stating:

> We have rejected the argument that futility on the merits of a claim in state court excuses a habeas petitioner's failure to exhaust that claim. Appellant failed to satisfy the exhaustion

10

requirement with respect to the sole claim raised in his § 2254
petition.

(D.I. 23 in *Boyer*, Civ. A. No. 17-834-LPS) (internal citations omitted).  Notably, the ODS
did not appeal the decisions in any of the forty-five petitions that were denied pursuant
to *Boyer*.  Given these circumstances, the Court rejects Petitioner's attempt to excuse
his failure to exhaust state remedies on the basis of "futility."

## B. Procedural Default

Having determined that Petitioner's intentional failure to appeal the denial of his
Rule 61 motion is not excusable, Petitioner's habeas claims remain unexhausted.  At
this juncture, any attempt by Petitioner to exhaust state remedies by presenting the
claims in a new Rule 61 motion would be barred as untimely under Delaware Superior
Court Criminal Rule 61(i)(1) and as successive under Rule 61(i)(2).  *See* Del. Super. Ct.
Crim R. 61(i)(1) (establishing a one year deadline for filing Rule 61 motions); Del.
Super. Ct. Crim. R. 61(i)(2) (barring second or successive Rule 61 motion unless certain
pleading requirements are satisfied).  Consequently, the Court must treat the claims as
procedurally defaulted, which means that the Court cannot review the merits of the
claims absent a showing of cause and prejudice, or that a miscarriage of justice will
result absent such review. *See Lines*, 208 F.3d at 160.

To demonstrate cause for a procedural default, a petitioner must show that
"some objective factor external to the defense impeded counsel's efforts to comply with
the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  To
demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to
his actual and substantial disadvantage, infecting his entire trial with error of

11

constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537-38 (2006); *see also Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

Petitioner admits he intentionally bypassed the traditional path for exhaustion by not appealing the denial of his Rule 61 motion and, instead, choosing to pursue federal habeas relief in this Court. To the extent Petitioner's three-pronged 'futility" argument should also be viewed as an attempt to establish cause for his procedural default, the argument is unavailing. In order to establish cause, Petitioner must demonstrate that an external factor prevented him from appealing the denial of his Rule 61 motion. In this case, nothing prevented Petitioner from filing a post-conviction appeal – he simply elected not to do so. Thus, Petitioner's belief that it would have been futile to present his claims to the Delaware Supreme Court does not constitute cause for his procedural default.

12

In the absence of cause, the Court does not need to address prejudice.  The Court further concludes that the miscarriage of justice exception does not excuse Petitioner's procedural default.  Although Petitioner contends that there is a reasonable probability that he would not have pled guilty had he known about the OCME misconduct, and also that he may have sought and received "a substantial reduction in the plea-bargained sentence as a condition of forgoing a trial" (D.I. 2 at 17), neither of these assertions constitutes new reliable evidence of his actual innocence.  Accordingly, the Court will deny the instant Petition as procedurally barred from federal habeas review.

## IV.   EVIDENTIARY HEARING

As an alternative request for relief, Petitioner summarily asks the Court to "hold an evidentiary hearing and allow full briefing on his claim." (D.I. 2 at 19)  It is unclear whether he requests an evidentiary hearing on the underlying OCME misconduct and *Brady v. Maryland/Brady v. United States* claims or on the procedural default of those claims.

### A.   Evidentiary Hearing On OCME Misconduct/Involuntary Guilty Plea Claims

AEDPA permits evidentiary hearings on habeas review in a limited number of circumstances.[4]  *See Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).  For

---

[4]Prior to the enactment of AEDPA, "the decision to grant an evidentiary hearing was generally left to the sound discretion of district courts." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).  However, evidentiary hearings were mandatory in six specific circumstances:  (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered

13

instance, 28 U.S.C. § 2254(e) provides:

> (1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.
>
> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –
>
>> (A) the claim relies on –
>>
>>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>>
>>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>>
>> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). The "initial inquiry" when determining whether to grant an

evidentiary hearing is whether the petitioner has "failed to develop the factual basis" of

the claim in state court.  *See* 28 U.S.C. 2254(e)(2); *Williams v. Taylor*, 529 U.S. 420,

433 (2000).  "Under the opening clause of § 2254(e)(2), a failure to develop the factual

---

evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing. *Townsend v. Sain*, 372 U.S. 293, 312 (1963), *overruled on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992). While AEDPA has not changed the "basic rule" of leaving the decision to grant an evidentiary to the discretion of the district courts, it has imposed certain limitations on the exercise of that discretion via § 2254(e)(2). *See Cristin*, 281 F.3d at 413.

basis of a claim is not established unless there is a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams*, 529 U.S. at 433. "Diligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Id.* at 437. When determining if a petitioner has been diligent, "[t]he question is not whether the facts could have been discovered but instead whether the prisoner was diligent in his efforts." *Id.* at 435. In short, if the factual basis of the claim was not developed but the petitioner was diligent in pursuing the claim in state court, the opening phrase of § 2254(e)(2) does not bar an evidentiary hearing. *See Lark v. Sec'y Pennsylvania Dep't of Corr.*, 645 F.3d 596, 614 (3d Cir. 2011).

However, "a petitioner who diligently but unsuccessfully seeks an evidentiary hearing in state court still is not **entitled** to an evidentiary hearing in federal court under AEDPA. Rather, […] whether to hold a hearing for a petitioner who is not at fault under § 2254(e)(2) remains in the discretion of the district court, and depends on whether the hearing would have the potential to advance the petitioner's claim." *Taylor v. Horn*, 504 F.3d 416, 444 (3d Cir. 2007) (emphasis in original); *see Schriro*, 550 U.S. at 473 (explaining that the "basic" pre-AEDPA rule leaving the decision on whether to grant an evidentiary hearing to the "sound discretion of district courts" has not changed under AEDPA). "Where a petitioner fails to forecast to the district court evidence outside the record that would help his cause or 'otherwise to explain how his claim would be advanced by an evidentiary hearing,' a court is within its discretion to deny the claim." *Buda v. Stickman*, 149 F. App'x 86, 90 (3d Cir. 2005).

Here, although no evidentiary hearing was held in Petitioner's Rule 61

proceeding, Petitioner does not explain how the factual premise of his claims needs further development as part of his federal habeas review.[5]  In fact, it appears that Petitioner decided to forego a Rule 61 evidentiary hearing when he agreed with the Superior Court's assessment that an evidentiary hearing was not warranted in his Rule 61 proceeding because the issues were legal in nature.  (See D.I. 14-34 at 5, 8, 9,12, 33, 35)  The Superior Court explained that, "factually the critical factor appears to be whether the defendant pled guilty or proceeded to trial," and it was "willing to rule on th[e] outstanding [Rule 61] Motions based upon the pleadings filed to date," subject to the parties' agreement.  (Id. at 8)  Given these circumstances, the Court is inclined to find that there was no failure to develop the factual basis of the claim at the state court level which, in turn, would eliminate the need for an evidentiary hearing here. Nevertheless, exercising prudence, the Court will continue with its analysis.

It appears that Petitioner technically satisfied § 2254(e)(2)'s diligence requirement because, at a minimum, the state record indicates that he originally sought an evidentiary hearing in the manner prescribed by state law.  (D.I. 14-34 at 5, 7-8) Since it appears that Petitioner exercised the type of diligence contemplated by § 2254(e)(2), § 2254(e) does not bar an evidentiary hearing,[6] which means that the Court

---

[5]At the risk of repetition, the Court emphasizes that the Rule 61 motion filed by Petitioner presented the same argument that the OCME misconduct constituted powerful impeachment evidence and a related identical involuntary guilty plea argument.  The Superior Court denied the Rule 61 motion for substantially the same reason, namely, because Petitioner knowingly and voluntarily admitted during his plea colloquy that he committed the drug crimes.

[6]Alternatively, even if the Court were to conclude that Petitioner did not satisfy the diligence requirement of § 2254(e)(2), then the Court would only be permitted (but not required) to hold an evidentiary hearing if Petitioner demonstrated that his case fell

retains discretion over the decision to conduct an evidentiary hearing. After reviewing the record, the Court concludes that Petitioner has not met his burden of showing that an evidentiary hearing would be meaningful in relation to the OCME misconduct/involuntarily guilty plea claim. His single-sentence request for a hearing does not forecast any evidence beyond that existing in the record that would help his cause, nor does it explain how a new hearing would advance his claim. Notably, Petitioner does not respond to the State's argument that an evidentiary hearing is not warranted. Moreover, given his admission of guilt during his guilty plea colloquy, and his failure to assert his actual innocence, Petitioner has not alleged facts that, if true, would permit him to prevail on the OCME misconduct/involuntary guilty plea claim. Accordingly, the Court concludes that an evidentiary hearing on the OCME misconduct/involuntary guilty plea claim is not warranted in this case.

### B.    Evidentiary Hearing on Procedural Default

The Third Circuit has held that § 2254(e)(2) does not bar an evidentiary hearing to determine if a petitioner can establish cause and prejudice to avoid a procedural default. *See Cristin*, 281 F.3d at 416-17 (holding that "the plain meaning of § 2254(e)(2)'s introductory language does not preclude federal hearings on excuses for procedural default at the state level."). Consequently, it is within the Court's discretion to hold an evidentiary hearing on Petitioner's excuse for his failure to appeal the denial of his Rule 61 motion.

---

within the very limited circumstances set forth in § 2254(e)(2)(A) and (B). Since Petitioner's single-sentence request for an evidentiary hearing does not come close to satisfying the requirements of § 2254(e)(2)(A) or (B), in this alternate scenario, § 2254(e)(2) would bar the Court from holding a hearing in this case.

17

As previously discussed,[7] the Court has considered, and rejected, Petitioner's reasons for the procedural default, and he does not provide any other reason or evidence that would excuse his failure to appeal the denial of his Rule 61 motion. Therefore, the Court will not hold an evidentiary hearing on the issue of procedural default.

## V.    CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability.   See 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2).   A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."   28 U.S.C. § 2253(c)(2); see also Slack v. McDaniel, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Petition does not warrant relief. Reasonable jurists would not find this conclusion to be debatable.   Accordingly, the Court will not issue a certificate of appealability.

## VI.    CONCLUSION

For the reasons discussed, the Court concludes that all the instant Petition must be denied.   An appropriate Order will be entered.

---

[7]See supra at III. A and B.

18